UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAMON GOMEZ, : | |
| Petitioner, : | |
| : | Civil No. 3:17-cv-383 (VLB) |
| v. : | Criminal No. 3:11-cr-174 |
| : | |
| UNITED STATES OF AMERICA, : | October 26, 2018 |
| Respondent. : | |

## MEMORANDUM OF DECISION DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 [DKT. 1]

Petitioner, Ramon Gomez ("Petitioner" or "Mr. Gomez"), seeks to have his conviction and sentence vacated pursuant to 28 U.S.C. § 2255. He claims fives grounds of ineffective assistance of counsel. Each of Mr. Gomez's grounds is devoid of merit and the Court accordingly denies his motion.

## Background

On November 9, 2011, a grand jury indicted Mr. Gomez for conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. *United States v. Gomez*, 11-cr-00174-VLB-9 (hereinafter "*Gomez*"), [Dkt. 59 (Indictment) at 2]. Mr. Gomez and two of his co-defendants, Antovany Acosta and David Castellano-Nunez, proceeded to trial beginning on June 2, 2013. *See Gomez,* [Dkt. 754 (Trial Minute Entry)]. On June 11, 2013, the Government closed its case-in-chief and each of the three defendants moved for judgment of acquittal, which the Court denied. *See Gomez,* [Dkt. 770 (Trial Minute Entry)].

On June 13, 2013, with the trial concluded, the jury convicted Gomez, Acosta, and Castellano-Nunez of the narcotics conspiracy charge set forth in the Indictment. *See Gomez*, [Dkt. 778 (Gomez Verdict Form)]. Within 14 days of the verdict, Acosta and Castellano-Nunez filed renewed motions for judgment of acquittal, or in the alternative, for a new trial, arguing that the evidence presented was insufficient to prove their guilt beyond a reasonable doubt. Gomez did not file a renewed motion for judgment of acquittal at that time. *See Gomez*, [Dkt. 793 (Castellano-Nunez Acquittal Mot.); Dkt. 795 (Acosta Acquittal Mot.)]. On November 8, 2013, this Court denied the renewed motions for judgment of acquittal. *See Gomez*, [Dkt. 880 (Order)].

Following the withdrawal of Gomez's trial counsel in March 2014, newly appointed counsel moved for leave to file a motion for judgment of acquittal or a new trial despite having missed the deadline to do so. *See Gomez*, [Dkt. 920 (Mot. for Leave to File)]. The Court denied the motion without prejudice to refiling, determining that the defendant had not alleged sufficient facts for the Court to find that the failure to file the motion was the result of excusable neglect. *Gomez*, [Dkt. 922 (Order)].

On July 30, 2014, this Court sentenced Mr. Gomez to the statutory mandatory minimum sentence of 120 months in prison and a suspended fine of $50,000, which was contingent upon illegal re-entry by Mr. Gomez into the United States following his deportation. *See Gomez*, [Dkt. 943 (Hr'g Minute Entry); Dkt. 942 (Judgment)]. The Court entered the judgment against Mr. Gomez on July 31, 2014. *See Gomez*, [Dkt. 942].

Mr. Gomez appealed the judgment on August, 7, 2014. *See Gomez*, [Dkt. 945 (Notice of Appeal)]. Specifically, Mr. Gomez argued (1) that reversible error was committed when the lower court permitted the Government translator to offer a lay opinion as to Mr. Gomez's voice identification which failed to satisfy Federal Rule of Evidence 701; (2) that the rule against hearsay and the confrontation clause were violated by the admission of post-arrest statements made by Mr. Gomez's co-defendants; and (3) that the fine should be vacated. *United States v. Gomez*, 14-2823 (hereinafter "*Gomez Appeal*"), [Dkt. 76 (Brief of Appellant) at 20, 29, 35].

On March 3, 2016, the Second Circuit issued a summary order affirming the judgment of the district court, except that the fine imposed was stricken. *See United States v. Pinzon-Gallardo, et al.*, 639 F. App'x 701 (2d Cir. Feb. 11, 2016). Among other things, the Second Circuit concluded that "the Spanish-language interpreter's testimony was within the bounds of admissible lay opinion on voice identification." *Id.* at 705. Next, the court concluded that any error in admitting statements by Mr. Gomez's co-defendants was harmless because "[t]his was not, after all, 'a close case that hinged directly on the jury's credibility determinations.'" *Id.* (quoting *United States v. Gaines*, 457 F.3d 238, 244 (2d Cir. 2006). Finally, the court concluded that Mr. Gomez was not able to pay the fine imposed, and thus struck the fine from his judgment. *Id.* 706.

On March 3, 2017, Mr. Gomez timely filed the instant § 2255 motion. *See* [Dkt. 1]. Mr. Gomez raises five grounds of ineffective assistance of counsel based on counsel's failure (1) to move for judgment of acquittal following the conclusion of the trial; (2) to advise Mr. Gomez of his right to testify at trial; (3) to object to the

drug quantity attributed to Mr. Gomez; (4) to argue that Mr. Gomez was actually innocent of the drug conspiracy; and (5) to call an expert to rebut the Government interpreter who identified Mr. Gomez's voice. *See id.* Mr. Gomez's arguments for grounds 1 through 4 hinge on the fact that he was allegedly in the Dominican Republic visiting family from October 2011 through October 2012—he suggests that counsel should have argued that he was actually innocent, and that there was insufficient evidence to convict him or to find the alleged drug quantity because he was out of the country during that time. He further suggests that, had he known of his right to choose to testify at trial, he would have told the jury that he was out of the country from October 2011 through October 2012 and that he therefore could not have been a part of the alleged conspiracy.

In response, the Government points out that the predicate acts that formed the basis for liability occurred between May 2011 and September 2011 such that Mr. Gomez's alleged absence from the country from October 2011 through October 2012 is inconsequential. The Government further lays out the substantial evidence presented at trial which the jury could have relied on in finding Mr. Gomez guilty. For each ground, the Government argues that counsel was not ineffective and also that, even if counsel were ineffective, no prejudice resulted, as required by *Strickland v. Washington*, 466 U.S. 668 (1984).

## Discussion

Section 2255 enables a prisoner in federal custody to petition a federal court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Section 2255 imposes a one year period of limitation, which runs from the latest of "(1) the date

on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through exercise of due diligence." *Id.* at § 2255(f).

Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citation omitted). Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

One qualifying constitutional error is ineffective assistance of counsel. In *Strickland v. Washington*, the Supreme Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. 668, 686 (1984). The Supreme Court laid out two components required to make a showing of ineffective assistance of counsel. "First, the defendant must show that counsel's

performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

As to the first prong, the Court has concluded that "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* This requires "objective reasonableness" "under prevailing professional norms." *Id.* at 688. Counsel has a "duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process," but counsel also has "constitutionally protected independence" and "wide latitude . . . in making tactical decisions." *Id.* at 688-89. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* This requires "a court [to] indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, the petitioner must "affirmatively prove prejudice." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. This requires the court to "consider the totality of the evidence before the judge or jury." *Id.*

As the Second Circuit has observed, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Linstadt v. Keane*, 239 F. 3d 191, 199 (2d Cir. 2001). Mr. Gomez makes five ineffective assistance of counsel claims, each of which clearly fails to satisfy the demanding requirements under *Strickland*. The Court takes each one in turn.

1. <u>Alleged Failure to Renew Motion for Judgment of Acquittal</u>

Mr. Gomez first argues that his trial counsel's "performance was deficient and the deficiency was subsequently prejudicial based on Counsel's failure to move for a judgment of acquittal in light of the fact that the evidence at trial was insufficient to find the Petitioner guilty of the charged conspiracy, since evidence demonstrated that the Petitioner was absent for the majority [of] time charged in the indictment and alleged Conspiracy." [Dkt. 1 at 10 of 12]. Mr. Gomez suggests that, because his passport indicates that he was in the Dominican Republic from

October 22, 2011 through October 18, 2012, there was not sufficient evidence to show that he was part of the conspiracy and his trial counsel should have moved for judgment of acquittal at the end of the trial. [Dkt. 13 at 1-2].

Mr. Gomez's allegation fails to rise to the level of unconstitutional ineffective assistance because he does not overcome the presumption that his trial counsel's decision was objectively reasonable. Federal Rule of Civil Procedure 29 provides that a defendant will be entitled to judgment of acquittal, if "[a]fter the government closes its evidence or after the close of all evidence," the court determines that "the evidence is insufficient to sustain a conviction." Fed. R. Civ. P. 29. Mr. Gomez's counsel made an oral motion for judgment of acquittal following the Government's presentation of its case, as did counsel for Mr. Gomez's co-defendants. *See Gomez*, [Dkt. 768 (Oral Mot.)]. Mr. Gomez's counsel argued that the Government had not proven the element of identification—no agent testified that they had seen or could identify Mr. Gomez as the person referred to or speaking on the phone calls, he was not present when drugs were seized, and he was not a participant in any undercover sales. *Id.* [Dkt. 965 (Trial Tr.) at 161:18-162:7]. The Court denied Mr. Gomez's motion for acquittal, "find[ing] that there's ample evidence to convict Mr. Gomez." *Id.* [Dkt. 965 at 163:14-15; Dkt. 770]. Thus, after hearing the Government's case, the Court believed there was more than enough evidence for the jury to conclude that Mr. Gomez was guilty.

Within 14 days of the trial concluding, counsel for Mr. Acosta and Mr. Castellano-Nunez renewed their motions for acquittal. *See id.* [Dkt. 793 (Castellano-Nunez Mot. for Acquittal); Dkt. 795 (Acosta Mot. for Acquittal)]; Fed. R.

Civ. P. 29(c). Rule 29 allows the Court to set aside a jury verdict and enter acquittal if the Court concludes that there is insufficient evidence. "A rule 29 motion should be granted only if the district court concludes there is 'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (citations omitted). Indeed, "[a] defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial 'bears a heavy burden,'" as he "must show that when viewing the evidence in its totality, in a light most favorable to the Government, and drawing inferences in favor of the prosecution, no rational trier of fact could have found him guilty." *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008). The Court concluded that Mr. Acosta and Mr. Castellano-Nunez did not meet this heavy burden, finding that "[t]here was abundant evidence presented at trial proving that Acosta and Castellano were part of a larger narcotic distribution conspiracy and that each knowingly joined the conspiracy and played an integral role it in." *Gomez,* [Dkt. 880 (Order Denying Mot. J. Acquittal) at 6].

Given the evidence presented by the Government against Mr. Gomez, his renewed motion for judgment of acquittal would have been denied as well. The Government's Response to Mr. Gomez's motion ably and thoroughly lays out the vast extent of the evidence against Mr. Gomez. *See* [Dkt. 11 at 8-10, 19-24]. The Government showed Mr. Gomez's pivotal role in all aspects of the drug conspiracy from securing the wholesale supply of drugs to insistence on distributing retail quantities of drugs to his residence in the small apartment used as the conspiracy's stash house. This evidence was more than sufficient for a jury to find

that he was a member of the conspiracy who knew or should reasonably have foreseen the quantity of drugs involved in the conspiracy.

Indeed, there is no doubt that the Court would have denied a renewed motion in light of the fact that Mr. Gomez did not present a defense case—the record at the close of the case being the same as the record already analyzed by the Court and found to include "ample evidence" to convict Mr. Gomez. Even if counsel had introduced evidence that Mr. Gomez had been in the Dominican Republic on the claimed dates, nothing would change, as the Government's evidence shows that the conspiratorial acts took place prior to that time. Under such circumstances, counsel's decision not to renew the motion was reasonable. As such, Mr. Gomez's first ground for ineffective assistance of counsel fails.

2. <u>Alleged Failure to Advise Mr. Gomez of His Right to Testify</u>

Mr. Gomez next argues that his counsel rendered ineffective assistance by failing to adequately advise him of his right to testify at trial. *See* [Dkt. 1 at 10 of 12]. Mr. Gomez suggests that "his trial counsel persuaded him not to testify by telling him that his testimony would damage the case." *Id.* He further argues that this ineffective assistance resulted in prejudice because he "would have told the jury that during the majority of the time alleged [in] the indictment . . . he was in the Dominican Republic, and not engaging [in] the conduct alleged in the indictment, therefore he was being wrongfully accused." *Id.*

In response, the Government provides the affidavit of Mr. Gomez's trial counsel, Wayne Keeney, an experienced criminal defense attorney now serving as a magistrate for the Connecticut Superior Court, who states that he did discuss

with Mr. Gomez his right to testify at the close of the Government's case. [Dkt. 11 at 27-28]. Attorney Keeney states that he explained to Mr. Gomez that he had the right to testify or to choose not to testify, and that the final decision belonged to Mr. Gomez. [Dkt. 11-1 at ¶ 2]. He further states that they discussed the drawbacks to testifying and that he advised Mr. Gomez against taking the stand. *Id.* Attorney Keeney states that, following the conversation, "Mr. Gomez informed me that he did not wish to testify." *Id.*

The Government also points out the inconsistency in Mr. Gomez's arguments on this ground—highlighting that Mr. Gomez claims Attorney Keeney did not discuss his right to testify with him but also says that Attorney Keeney advised him not to testify, suggesting that a discussion on the topic did occur. [Dkt. 11 at 28].

It is well-settled that a criminal defendant "has the right to take the witness stand and to testify in his or her own defense." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Rock v. Arkansas*, 483 U.S. 44, 49 (1987)). The decision to testify is solely for the defendant to make, and defense counsel is tasked with the responsibility to "advis[e] the defendant of his right to testify or not to testify." *Id.* Included in counsel's duty is to "advise the defendant about the benefits and hazards of testifying and not testifying," and although counsel is permitted to "strongly advise the course that counsel thinks best" he must leave the ultimate decision to the defendant. *Id.*

Here, the Court agrees with the Government that Mr. Gomez has not made a credible claim that Attorney Keeney failed to adequately advise him of his right to

testify. At the same time as he claims that "counsel failed to advise the Petitioner of his rights to test[y] at trial," Mr. Gomez states that "his trial counsel persuaded him not to testify by telling him that his testimony would damage the case." [Dkt. 1 at 10 of 12]. Mr. Gomez's inconsistent statements suggest that, consistent with Attorney Keeney's affidavit, Attorney Keeney did explain to Mr. Gomez his right to decide whether to testify. Moreover, Mr. Gomez's blanket statements that Attorney Keeney did not adequately inform him of his right to testify are not convincing, especially in light of the detailed affidavit from Attorney Keeney credibly describing the circumstances concerning his advice to Mr. Gomez.

Based on the record before the Court, it is not necessary to hold a hearing on this issue (or any other raised in Mr. Gomez's motion). Generally, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). The Court has before it its own knowledge of Mr. Gomez and Attorney Keeney as a result of presiding over Mr. Gomez's trial and sentencing, Mr. Gomez's petition and reply brief, and Attorney Keeney's detailed affidavit. Mr. Gomez provides a generic claim based solely on his own assertions, while Attorney Keeney provided an affidavit explaining his counsel to Mr. Gomez regarding his right to testify. Further testimony from Mr. Gomez and Attorney Keeney would add little or nothing of consequence to the current record. As the Second Circuit has acknowledged, this claim is "one that can be, and is often, made in any case in which the defendant fails to testify," and it is within the district court's discretion to "avoid[] the delay, the needless expenditure of judicial resources, and perhaps the encouragement of

other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing" in cases such as the one currently before the Court. *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (holding that it was within the district court's discretion to determine that a hearing was unnecessary with respect to the petitioner's claim because the court already had an affidavit from trial counsel and a statement from the petitioner). As such, the Court concludes that a hearing is not warranted and that, based on the papers, Mr. Gomez conclusively fails to show that he is entitled to relief on this ground.

3. <u>Alleged Failure to Object to Drug Quantity</u>

Next, Mr. Gomez argues that his counsel was ineffective because he did not object to the alleged drug quantity and present Mr. Gomez's passport showing his absence from the country between October 22, 2011 and October 18, 2012 to call into question whether one kilogram of heroin was reasonably foreseeable to Mr. Gomez. [Dkt. 1 at 11 of 12]. For a conviction under 21 U.S.C. § 841, a jury must find, or the defendant must admit to, the drug-quantity element. *United States v. Adams*, 448 F.3d 492, 499 (2d Cir. 2006). Further, the Second Circuit requires proof beyond a reasonable doubt that the drug type and quantity were at least reasonably foreseeable to the co-conspirator defendant." *Id.* (citing *United States v. Martinez*, 987 F.2d 920, 926 (2d Cir. 1993)).

Mr. Gomez's counsel raised the issue of foreseeability of the drug quantity with the jury during his closing argument. *See Gomez*, [Dkt. 966 (Trial Tr. 6/12/2013) at 32:1-33:1]. Attorney Keeney urged the jurors to ask themselves whether the Government had proven beyond a reasonable doubt that Ramon Gomez could have

foreseen one kilogram of heroin. *Id.* He described the minor role the Government's evidence had indicated Ramon Gomez had played as well as the relatively small quantities of drugs that the Government had actually found on the co-conspirators, noting that these drugs were found nowhere near Ramon Gomez himself. *Id.* He suggested to the jury that the Government had not met their burden. *Id.*

Attorney Keeney did not present evidence that Petitioner had been in the Dominican Republic from October 2011 to October 2012. However, that decision was not unreasonable. It is possible that the jury could have seen Mr. Gomez's absence from the country as an indicator of guilt—that he had fled the United States after his involvement in the conspiracy either because he was concerned that the Government was on to his illegal activity or because he wanted to get away from the illegal activity. It is entirely possible that Attorney Keeney saw little advantage to presenting the evidence because the Government had presented substantial evidence that linked Ramon Gomez to the conspiracy taking place between March 2011 and September 2011.

With little advantage, and several potential disadvantages, to telling the jury about Mr. Gomez's time in the Dominican Republic, it was entirely reasonable for Attorney Keeney to decide against going that route. Instead, Attorney Keeney pointed the jury to other potential holes in the Government's case—that the agents had not interacted with Mr. Gomez, that he had not been directly connected to the drugs that were found, that the calls he was purportedly a part of mentioned only small quantities of drugs, and that the voice identification was unreliable. This calculation by Attorney Keeney was not outside the realm of reasonable conduct

for counsel. As such, Mr. Gomez has failed to show ineffective assistance on this ground.

### 4. Alleged Failure to Argue Actual Innocence

Mr. Gomez next alleges that his trial counsel was deficient because he "failed to argue that the Petitioner is actually innocen[t] of the conspiracy charged in the indictment in light of the dates for which the Petitioner was out of the country." [Dkt. 1 at 11 of 12]. This claim is without merit. First, the predicate acts forming the basis for Mr. Gomez's conspiratorial liability occurred between May 2011 and September 2011, so any potential absence from the country after that time is inconsequential here. And second, as the Government lays out in its brief and as discussed *infra*, there was abundant evidence as to Mr. Gomez's guilt. [Dkt. 11 at 8-10, 16-24]. Based on the facts, Mr. Gomez's counsel was not deficient for failing to argue actual innocence and this ground fails as well.

### 5. Failure to Call Rebuttal Expert

Finally, Mr. Gomez argues that his trial counsel was ineffective based on the fact that he did not call an expert to rebut the Government's voice identification witness. This claim is without merit as well.

The Government's wire monitor, who is fluent in Spanish, was not an expert, but a lay witness, who, as a result of listening to many hours of recorded phones conversations over the course of six months and comparing them with control voice samples, was able to identify one of the voices on the calls as Mr. Gomez's. Defense counsel extensively cross-examined the interpreter in an attempt to call into question her voice identification. *See Gomez*, [Dkt. 965 (6/11/213 Trial Tr.) at

15

128-142)]. And the jury had the opportunity to evaluate the evidence presented as well as the credibility of the Government's witness.

The decision to cross-examine the interpreter, rather than put on a rebuttal witness, was entirely reasonable, as "identifying a voice is not an area where expertise is particularly important." *Marte v. United States*, 3:14–CV–560, 2015 WL 4094187, at *3 (D. Conn. July 7, 2015); *see also Samet v. United States*, 559 F. App'x 47, 50 (2d Cir. 2014) (finding no ineffective assistance where counsel "elected to undermine the government's witnesses through cross-examination rather than through rebuttal [handwriting and voice identification] experts"); *United States v. Salameh*, 54 F. Supp. 2d 236, 252 (S.D.N.Y. 1999) (finding attorney's decision not to seek expert testimony to rebut witnesses identifying voice as the defendant's "was a decision well within the wide range of professionally competent assistance"). Rather, "lay witnesses can compare voices and make identifications, and the jury can decide whether to believe such witnesses." *Marte*, 2015 WL 4094187 at *2*.

Mr. Gomez has provided no evidence to suggest that a voice identification expert would have concluded that the voice on the calls did not belong to Mr. Gomez. And all of the evidence presented by the Government supported the conclusion that the voice did, in fact, belong to Mr. Gomez. As such, Mr. Gomez has failed to show that his counsel was ineffective by electing to cross-examine the voice identification witness rather than bring in a rebuttal expert.

## Conclusion

For the foregoing reasons, Mr. Gomez's § 2255 motion to vacate, set aside, or correct sentence is DENIED. Because Mr. Gomez's claims are without merit, a certificate of appealability of this decision is DENIED. The Clerk is directed to close this case.

                                      IT IS SO ORDERED

                                        _____/s/_____

                                      Hon. Vanessa L. Bryant
                                      United States District Judge

Dated at Hartford, Connecticut: October 26, 2018